The BOARD OF REGENTS FOR SOUTHWEST MISSOURI STATE UNIVERSITY, Appellant,

v.

George Daniel HARRIMAN, Defendant,

American National Insurance Company, a/k/a American National Property and Casualty Company, Respondent,

George Daniel Harriman and Belinda Harriman, Intervenors.

No. 18324.

Missouri Court of Appeals, Southern District, Division One.

June 11, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 1993.

Application to Transfer Denied Aug. 17, 1993.

Lee Chestnut, Springfield, for appellant.

Frank M. Evans, III, Cynthia B. McGinnis, Miller & Sanford, P.C., Springfield, for respondent.

PER CURIAM.

The Board of Regents of Southwest Missouri State University (SMSU) brought this action against George D. Harriman (Harriman) to collect three promissory notes, together with accrued interest and attorney fees. Judgment was entered for SMSU, against Harriman, in the amount of $11,159.05 and for court costs. Execution issued followed by garnishments in aid of execution. A garnishment was directed to American National Insurance Co. (American National) as garnishee defendant. After an earlier appeal that upheld the judgment, SMSU filed its motion for judgment on the pleadings in the garnishment proceeding against American National. SMSU sought payment of its judgment against Harriman from a fund that had been held under the direction of American National at the time it was garnisheed. The trial court denied the motion. This court reverses and remands.

This is the third time that this court has addressed issues raised or generated by SMSU's suit against Harriman. In *State ex rel. Board of Regents v. Bonacker*, 765 S.W.2d 341 (Mo.App.1989), (*Harriman I*), this court held that SMSU was entitled to a peremptory change of judge, pursuant to Rule 51.05(a), in a garnishment proceeding. *Id.* at 347. SMSU had obtained a default judgment against Harriman in 1985. It commenced garnishment proceedings almost three years later in an effort to collect the judgment.

The case was before this court a second time in *Board of Regents v. Harriman*, 792 S.W.2d 388 (Mo.App.1990), (*Harriman II*). After the decision in *Harriman I*, the trial judge who was originally assigned to the case granted the requested peremptory disqualification. As originally filed, the case had named Southwest Missouri State University as plaintiff. In *Harriman II*, Harriman asserted "that SMSU had no 'standing' to sue" in its institutional name, 792 S.W.2d at 391; that an action could be maintained only in the name of its Board of Regents. Harriman sought to have the judgment that had been entered against him set aside. The newly assigned trial judge granted Harriman's request. The trial court set aside the default judgment and quashed the execution and garnishments that had issued. On appeal, this court held that although there was no legal entity named "Southwest Missouri State University" (or SMSU):

> The use of such "fictitious" name is expressly sanctioned by the legislature in § 174.020 [1] and by § 174.030 the legislature authorized the Board of Regents to change that "fictitious" name. Where the real party is designated by a name it has adopted and become known by, no reason can be perceived for setting aside a judgment for lack of a legal plaintiff. *Bowen v. Buckner*, 171 Mo.App. 384, 387–88, 157 S.W. 829, 830 (1913).

792 S.W.2d at 391–92 (footnote omitted). It concluded, "[Harriman] is estopped, as a matter of law, from asserting the issue of lack of legal existence of SMSU." *Id.* at 392.

Although *Harriman II* reversed the trial court's order that set aside the judgment that was entered in favor of SMSU and against Harriman, it did not reverse the order that quashed the execution and the writs of garnishment in aid of execution. It stated, "No specific reason was assigned by the trial court for the order quashing execution and garnishments." *Id.* at 393. It then observed that in reviewing the trial court's decision, "the primary concern of the appellate court is the correctness of the result that is reached." *Id.* It concluded:

---

1. References to statutes are to RSMo 1986.

The judgment or order is to be affirmed if it properly could have been reached on any basis. *David v. Shippy*, 684 S.W.2d 586, 587 (Mo.App.1985). The legal file does contain [Harriman's and his wife's (as intervenor)] motion to quash the execution and garnishments. [Harriman] does aver in that motion that SMSU never effected a lien upon [his] property ... because there was no proper service of summons and no proper notice of garnishment served upon garnishee American National Insurance Company. Despite that assertion in a motion before the trial court, SMSU did not include in the legal file any proof of service of the notice and summons on the garnishee. SMSU did not include in the legal file any proof of the levy of the execution. This court is entitled to assume that the omitted portions of the record were unfavorable to SMSU, and that is why they were not included. *Daniels v. Griffin*, 769 S.W.2d 199, 201 (Mo.App.1989); *Delf v. Cartwright*, 651 S.W.2d 622, 624 (Mo. App.1983).

*Id.* at 393–94.

*Harriman II* also discussed requirements for valid garnishments. It held that because there was no proof of service on garnishee defendant American National, the trial court lacked jurisdiction over the res. It concluded, for that reason, that the trial court's order quashing the execution and garnishment was correct, holding:

> [T]he trial court's order setting aside the default judgment in favor of SMSU is reversed. The case is remanded to the trial court with direction to reinstate the judgment. The portion of the trial court's order quashing the execution and garnishments is affirmed.

*Id.* at 394.

In this appeal, SMSU contends that *Harriman II*'s determination that there was no service of summons and notice of garnishment on garnishee defendant American National was incorrect. The legal file includes copies of a summons to garnishee and notice of garnishment that was directed to American National. It also has a copy of a sheriff's return showing service on American National.

Notwithstanding the foregoing claims, American National, by its respondent's brief, contends that SMSU has no right to appeal from the trial court's order denying the motion for judgment on the pleadings. American National poses several arguments by which it contends that this court lacks jurisdiction to grant relief to SMSU, and that the trial court lacked jurisdiction to rule on the motion for judgment on the pleadings. It contends that the appeal should be dismissed.

■ American National, both by a point raised in its respondent's brief and by separate motion, contends that this appeal should be dismissed for failure to comply with Rule 84.04. American National complains that the statement of facts and the points relied on are defective.

This appeal is not based upon facts developed at an evidentiary hearing. The salient fact regarding the garnishment proceeding that produced this appeal is that there is a judgment. The recitation of facts in SMSU's brief is sufficient.

The points relied on apprise this court of the action of the trial court that SMSU complains about. The points apprise this court why SMSU considers the action to be erroneous and contain a statement informing this court wherein the record on appeal supports the position SMSU asserts the trial court should have taken. The points relied on are sufficient. *See Bentlage v. Springgate*, 793 S.W.2d 228, 229 (Mo.App. 1990). American National's motion to dismiss the appeal for failure to comply with Rule 84.04 is denied.

■ American National next asserts that the order from which SMSU has appealed is not "a final appealable order." It cites three cases for this proposition, *State ex rel. Cullom v. Becker*, 305 S.W.2d 56 (Mo. App.1957), a case in which there was an attempt to appeal an order denying a motion for judgment on the pleadings; and *St. Charles County v. Ross*, 718 S.W.2d 209 (Mo.App.1986), and *McCready v. Southard*, 671 S.W.2d 385 (Mo.App.1984), cases in

which there were attempts to appeal orders denying motions for summary judgment.[2] The rulings in all three cases did not resolve all pending issues. However, in *State ex rel. Cullom v. Becker* the court acknowledged that if the trial court had disposed of all issues, the appellate court "could have ruled on the merits" to which the motion for judgment on the pleadings was directed. 305 S.W.2d at 57–58.

In this case the trial court disposed of all pending issues in its order denying SMSU's motion for judgment on the pleadings. It dismissed "an intervenor's petition" filed in the garnishment proceeding by Harriman's spouse. The trial court's order denying the motion for judgment on the pleadings was a special order after final judgment. SMSU may appeal from that special order. § 512.020.

■■■■ American National contends that the trial court lacked jurisdiction to rule on SMSU's motion for judgment on the pleadings. It contends that "the court's mandate [in *Harriman II*] to the trial court only provided for reinstatement of the default judgment set aside by the trial court." American National argues that the trial court was without authority, or "jurisdiction," to take any action after *Harriman II* other than was necessary "for reinstatement of the default judgment set aside by the trial court."

Although American National has referred to this court's mandate in *Harriman II* it did not discuss the function that a mandate serves.

Where the judgment of an appellate court calls for the remand of the cause to the trial court for further action the judgment is not self-executing but must be certified back to the trial court for execution. This is done in this state by what is called the mandate, and by it authority and jurisdiction is granted to the lower court to take such steps as are directed. *Prasse v. Prasse*, 342 Mo. 388, 115 S.W.2d 807 [1938]; *Abrams v. Scott*, 357 Mo. 937, 211 S.W.2d 718 [1948]. The

mandate serves the purpose of communicating the judgment to the lower court, *State ex rel. Kansas City of Missouri v. Public Service Commission of Missouri*, 360 Mo. 339, 228 S.W.2d 738, 741 [1950], and the opinion, which is a part thereof, serves in an interpretative function. *Hoelzel v. Chicago R.I. & P. Ry. Co.*, 340 Mo. 793, 102 S.W.2d 577, 578 [1937]; *State ex rel. McGrew Coal Co. v. Ragland*, 339 Mo. 452, 97 S.W.2d 113, 115 [1936].

*Durwood v. Dubinsky*, 361 S.W.2d 779, 783 (Mo.1962). The mandate in *Harriman II* directed the trial court to "reinstate the judgment." The garnishment proceeding that was addressed in *Harriman II* was an ancillary remedy. Its purpose was to obtain payment of an existing judgment. *Fulkerson v. Laird*, 421 S.W.2d 523, 526 (Mo.App.1967). Considering that the garnishment proceeding was ancillary to the judgment that was appealed in *Harriman II*, and considering that the directive given the trial court in the mandate was for it "to reinstate the judgment," the trial court had "jurisdiction" to consider the motion for judgment on the pleadings that was filed after the remand in *Harriman II*.

■■■■ American National also argues that SMSU is not entitled to recover for money released or for prejudgment interest on that money. It bases that argument on the fact that the payment to Harriman was made after the trial court had declared SMSU's judgment void and ordered the execution and garnishments quashed. The money was paid the third day following the date of the trial court's order. However, the trial court's order was not final for purposes of appeal when the payment was made to Harriman. Upon reversal of the order setting aside the default judgment, any right of SMSU for the fund to be applied to the debt owed by Harriman was restored. *See State ex rel. Abeille Fire Ins. Co. v. Sevier*, 335 Mo. 269, 73 S.W.2d 361, 366 (banc), *cert. denied*, 293 U.S. 585, 55 S.Ct. 99, 79 L.Ed. 680 (1934). The ques-

**2.** *St. Charles County v. Ross, supra,* involved a joint motion to dismiss that was treated as a motion for summary judgment.

tion of whether SMSU is now entitled to recover money from American National depends, in part, on the determination of the merits of SMSU's present appeal.

■ American National also complains that SMSU has attempted to get this court to address an issue that was not presented to the trial court. SMSU has requested, in order "to dispose of this case finally," that this court direct that "prejudgment interest" be allowed at "the statutory rate" on the amount of its claim against American National. That issue is not cognizable in this appeal.

■ After *Harriman II*, SMSU was left with a valid judgment against Harriman but without a valid execution and garnishment. SMSU then filed a motion with this court for rehearing or transfer to the Supreme Court of Missouri. That motion was denied. SMSU did not thereafter file an application in the supreme court for transfer. Arguably, the adjudication that affirmed the trial court's order quashing the execution and garnishment became the law of the case. American National argues, for that reason, that nothing remains for consideration by this court.

■ This court's determination in *Harriman II*, on the record that was then before it, was correct. The issue that was addressed was the matter of service of process in the garnishment proceeding. SMSU should not have been surprised that it was addressed. It had been raised even before the appeal in *Harriman II*. The opinion in *Harriman I* referred to the question of whether "proper service of the

summons and notice of garnishment was made on American National." 765 S.W.2d at 349. Harriman was asserting that there had not been proper service. The question was identified as an issue to be determined in the garnishment proceeding. *Id.* Although Harriman was not a named party in the prohibition action, his attorneys, as is usual in such cases, participated in it by filing the answer and brief before this court for the respondent judge. *Id.* at 342 n. 3. SMSU was apprised, both by what was asserted in *Harriman I* and by the motion filed in the trial court, that Harriman contended there had been no proper service of process on American National. SMSU had the responsibility, as appellant in *Harriman II*, to file a record on appeal that contained everything necessary for deciding that issue. *In re Marriage of Kohler*, 778 S.W.2d 19, 21 (Mo.App.1989); *Morovitz v. Morovitz*, 693 S.W.2d 189, 191 (Mo.App.1985). Having failed to do so, SMSU is not now in a posture that permits it to complain that the holding in *Harriman II* that affirmed the trial court's order quashing the garnishment and execution was based on an erroneous assumption.

■ Notwithstanding the foregoing, as observed in *Steen v. Colombo*, 799 S.W.2d 169, 174 (Mo.App.1990), the doctrine of law of the case does not apply when, *inter alia,* injustice to the rights of the parties would be done by adhering to an earlier appellate opinion in an ongoing lawsuit.[3] For the reasons that follow, this court does not consider application of the doctrine of law of the case appropriate.

---

**3.** *Steen v. Colombo* further explained, "[T]he 'law of the case' is not really a species of res judicata." 799 S.W.2d at 174. American National, however, cites 6 cases in support of its claim that *Harriman II* is res judicata as to the garnishment proceeding that is the subject of this appeal. None apply to the circumstances in this case.

*State ex rel. Ward v. Stubbs,* 374 S.W.2d 40 (Mo.1964), was a cause of action that was previously dismissed with prejudice. The with prejudice dismissal constituted a res judicata determination for facts that had been pleaded or that could have been pleaded. The earlier dismissal, with prejudice, had been a final determination of the cause of action.

*Penner v. Whitesell,* 538 S.W.2d 772 (Mo.App. 1976), was an action for declaratory judgment

that sought determination of identical issues that had been adjudicated and decided in another case. The prior case was a mandamus action. The parties were the same in both cases.

*Estate of Davis v. Davis,* 574 S.W.2d 477 (Mo. App.1978), involved a probate court's attempt to include real estate in the inventory in a decedent's estate. An earlier action for declaratory judgment had determined that the decedent was possessed only with a life estate. The first case was res judicata as to the probate proceeding.

*Jackson v. Hartford Accident & Indemnity Co.,* 484 S.W.2d 315 (Mo.1972), involved the same issues between the same parties as an earlier case that had been tried in the U.S. Court for the Western District of Missouri. The final judgment in the federal case was res judicata as to the action in the Missouri court.

The trial court's order that prompted the appeal in *Harriman II*, the order setting aside the judgment and quashing the execution and garnishments, was entered December 8, 1989. On December 11, 1989, funds that had been withheld from checks that, at the time American National was served with notice of garnishment, were held under its direction were paid to Harriman, SMSU's judgment debtor. SMSU's notice of appeal was filed December 20, 1989.[4]

 American National was a third person with respect to the judgment SMSU had against Harriman. Nevertheless, it had a duty to refrain from conduct that obstructed enforcement of that judgment.

It is the duty of a garnishee to stand neutral in the litigation over the fund in his hands, to disclose all the information it has concerning the fund to the court, and to hold the fund in readiness to abide by the decision of the court. When he follows this course, he is entitled to the fullest protection; but when the garnishee, ..., abandons his position as stakeholder and takes up the role of a litigant to such an extent that he pays out the fund to one of the parties and takes, in place of the fund, the chance of defeating the plaintiff, he must be content to accept the outcome of the battle fought out on the field he has chosen.

*Potter v. Whitten*, 170 Mo.App. 108, 155 S.W. 80, 88 (1913). *See also* Restatement (Second) of Judgments § 63 comment a (1982).

American National permitted the checks to be delivered to attorneys for Harriman who converted them into money, keeping sufficient funds to pay the garnishments until immediately after the trial court entered its order quashing the garnishments. American National did so at its peril.

Had this court had before it in *Harriman II*, the record on appeal that it now has, this court would not have upheld the part of the trial court's order that quashed the execution and garnishment on the basis that there was no service of summons and notice of garnishment on garnishee defendant American National. Since American National did not rely on this Court's opinion in *Harriman II* in delivering the checks in question to Harriman's attorneys and in making them available for payment to Harriman before this court's opinion in *Harriman II* became final, this court concludes that the trial court's order denying SMSU's motion for judgment on the pleadings should be reversed and the case remanded to the trial court.

The trial court's order denying SMSU's motion for judgment on the pleadings is reversed. The case is remanded with directions to hear and determine the issues framed by the pleadings of SMSU and American National in the garnishment proceeding other than any contentions by American National that the execution and garnishments are void for defects in service.

All concur.

---

*Se–Ma–No Electric Cooperative v. City of Mansfield*, 321 S.W.2d 723 (Mo.App.1958), was dismissed for res judicata because the plaintiff had previously sought the same relief in another case that had been dismissed with prejudice.

*State ex rel. Metropolitan Life Ins. Co. v. Hughes*, 347 Mo. 549, 148 S.W.2d 576 (banc 1941), involved an attempt to file a second suit after the first had been tried before a jury, reduced to judgment and appealed. The appeal had been dismissed for failure to follow rules of court. *See Adams v. Metropolitan Life Ins. Co.*, 228 Mo.App. 915, 74 S.W.2d 899 (1934). The judgment was res judicata.

**4.** The order from which SMSU appealed in *Harriman II* was not final, for the purpose of ascertaining the time within which it could be appealed, when SMSU filed its notice of appeal. The order did not become final, for that purpose, until 30 days following its entry. Rule 81.05(a). A notice of appeal is to be filed "not later than ten days after the judgment or order appealed from becomes final." Rule 81.04(a). Rule 81.05(b) provides, however, that when "a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal." By reason of Rule 81.05(b), SMSU's notice of appeal in *Harriman II* was deemed to have been timely filed.